United States v. John Buenaventura. Mr. Ramos. Victor Ramos Rodriguez. In this case, we were shocked by the gross violations of defendants' rights under the three working days prior to the trial, the whole scenery in regards to the evidence that was presented to the defendants' counsel was changed. We have here that only three days prior to the trial, defendants' counsel received a notice on the Rule 16 by the government changing the designation of evidence provided before and announcing some expert testimony together with certain other evidence that should have been available to the defense and that the government had noticed of it right off the bat. Yet they waited three working days prior to the trial to announce that an expert witness was going to be used as part of the government's case. Here's what the government says. You waited to assert the defense that your client's intention was not to go to Puerto Rico, but to what was the place? San Martin. San Martin. Until ten days before trial, at which point they realized that they had an issue. They realized that they were going to need expert testimony on whether he could possibly, in the EOLA, have made it that far, and they then gave you the expert report five days before trial. You had the opportunity to respond to the expert report. You had the opportunity to come up with your own witnesses, and that there was no harm done, and you never said to the district court there was a Rule 16 violation. Anyway, that's what I remember the government saying. So what's your response to that? Well, first of all, the same day that the Coast Guard agents intervened with EOLA or the small ship, they also interviewed the passengers, including the defendant. And in that interview, the defendant informed the agents that he was traveling to San Martin, that he had no intentions of going to Puerto Rico. So they knew right from the first day. They knew from the interview. From the interview. They knew that that was the defendant's position. And additionally, there were five other passengers who also testified, or as a result of the interview, told the agents that they were going to San Martin. They were not going to Puerto Rico. So the agents knew right off the bat from the first day that that was going to be an issue. So it really surprised me that the government claims that. Well, if that was going to be an issue from the first day, what were you caught by surprise about when the government provides some evidence? Because the counsel for the defendant relied on the designation of evidence that was provided to him prior to the trial. And there was no information. There was no notice given as to the fact that the government intended to use any expert witness. And the strategy that was taking place by the defendant was based on the information provided by the government. In that case, it surely was a surprise when only three working days prior to the trial, they informed the defendant they were going to use some expert witness. Mr. Ramos, certainly five days prior to trial is normally way too little to find an expert, prepare an expert, and do all the things you have to do as you're getting ready for trial. If we assume that's the case here, though, with this particular expert, what was it the expert said that you would have needed another expert to challenge? Because as I understand it, his mathematical formula of converting gasoline to miles was not really disputed in any event. It was orders of magnitude beyond what it would need to be to help your client. And the attack on him seemed to be more on the factual assumptions that he was given to rely on in making that calculation. So I came back to you were giving way too little time, but what harm did it ultimately do? Well, he relied on part of the factual basis that he relied on. He made reference to some Coast Guard manual that provided him the weight of the passengers that should be taken into account in order to make that mathematical analysis. And the defense didn't have any access to that manual. Yes, but if I understand it, if you doubled the weight or if you halved the weight, you still came out hundreds of miles short of St. Martin. Yes, but the fact is that together with that situation, it's the other situation that they destructed the evidence that was in that EOLA. Okay, now we're on a different issue. Yes, but it's related to the fact that they assumed that there was only one gas container with 15 gallons of fuel. And that was the basis that they used to determine that with that fuel, it was impossible that that EOLA could have reached St. Martin. And isn't that fact that he testified to, that with that fuel you couldn't make it, and instead you'd need 15 times that amount of fuel, those facts are kind of undisputed, aren't they? Isn't the dispute over how much fuel was there? Part of the disputed facts was how much fuel was in the EOLA. And the expert offered no testimony about how much fuel was there. He just assumed what was given to him. He assumed what was given to him by the agents. And there's evidence in the record that stated that there were at least nine containers of fuel, each one having like 18 gallons of fuel. So that was a big difference because the agents, what they claimed was that they only saw one container because the other ones were empty, and that container was like 75% full. So it's a big difference. And we understand that if we had the opportunity to have an expert analyze all the situations, then the jury will have a different story as to whether or not it was possible for the ship to reach the island of San Martin. I don't understand. The expert was given certain factual assumptions. You were free. After all, your client had a much better sense of what the number of gallons of fuel. You were given the opportunity to challenge the factual assumption. Not really because the counsel filed a motion requesting a continuance to be able to get an expert and to be able to get the witnesses. In this case, there was another situation. You could have used the same expert and changed the underlying factual assumptions and gotten him to answer the question. Assume you had 70 gallons. Would that have been enough? And then you could have built a case around why it was 70 gallons. Well, the transcripts reflect that the counsel for the defendant attempted to do that, but the expert didn't have the mathematical analysis with him or the manual, and he wasn't able to specifically say or give testimony as to how it would change his conclusion, given these other facts, and that's in the transcripts. So what... Didn't he say how many miles per gallon the boat would move? Yes, but another factor has to be taken into consideration as to the weight of the people, the wind factor, the weather conditions, and the amount of fuel. There was other factors that have to be taken into consideration in order to be able to reach a decision. So that's why... I'm sorry, the weight of the people, isn't he in the best position to know who he took with him on this voyage? No, because he used the manual which says that the average weight was 200 pounds. He didn't go into the 18 peoples to know how much they weighed. Your client is not disadvantaged by that fact. Your client has some sense of the weight of the people who were on the YOLA with him. Your client could have attacked these assumptions on that basis. So it's hard to see why a delay in getting you the expert report made much of a difference. We humbly understand that it changed the defense the other way around because of the situation that it is not the same. A defendant has to have the right to properly challenge those facts or those conclusions made by the expert. And if the defendant could find another expert with the same or better qualifications than the expert that the government brought to challenge that, that's a right that the defendant should have and should be provided. Thank you, counsel. Good morning, your honors. May it please the court. Kelly Tiffany on behalf of the government. I'll start first with the argument from counsel regarding the lack of notification regarding the expert. I believe Chief Judge Lynch, you sort of hit the nail on the head from the beginning. And he replied, you knew from the outset of the case, from his own statements, what the likely defense was at trial. You didn't need to wait until too short a period of time before trial. So what's the response? Yes, your honor, in regards to that, this case had a lot of back and forth regarding plea negotiations. And in prepping for a change of plea, the United States didn't take the appropriate steps in prepping for a trial down the road. So the preparation for this trial took place really a few weeks before it was set to go. And in so doing, they were able to acquire and speak with a representative from the Coast Guard to act as an expert. But they didn't acquire the expert until the week before trial when it was, in fact, designated and informed to the defendant. Why not agree to postpone the trial? Your honor, in this case, the United States was not in a position to postpone it based on the fact that, specifically with military members, they have a certain length of tour that they'll serve in their various assignment. And then they rotate out. When prepping for a trial and trying to plan the logistics, a lot of times half the battle is just procuring the witnesses, especially if they've been reassigned to other locations outside of Puerto Rico. So in this particular case, knowing that we were bringing Coast Guard witnesses to testify, we had an interest in seeing the case go forward to offset any finances for the logistics of maintaining those people. So what I just heard you say is in a case in which you knew there would be some exigency of a deadline so that you wouldn't lose witnesses, the government simply never got around to getting its case together for this expert until right before the trial. Well, your honor, we... There was nothing the defendant did or didn't do. With regard, I'm sorry, can you repeat your question? Sure. It sounds to me like you knew from day one you were going to need to prove that this guy was trying to get into the United States. Yes. To Puerto Rico. And you just, what I hear you saying is you hoped the case might settle. We hoped the case might settle. Because it didn't settle, you found yourself unprepared or rushing around right before trial. We found ourselves two weeks before trial procuring the witnesses. And that's generally the amount of time, two to three weeks in a busy district such as Puerto Rico, where the caseload is heavy, in procuring witnesses and focusing on a case. If it takes you two to three weeks, you've got to figure the defendant should have an opportunity to obtain witnesses. Sure. And in response to that, the defendant rightfully admitted that he knew up front what his defense was. Did defendant ask that the trial be put off because of the late expert witness notice? The defendant asked to postpone the trial so that he could speak with his client and a sister of his client in order to address the expert that we named and the potential testimony from him. But did not say I need time to get my own witness? Your Honor, if I'm not mistaken, at trial, he never alleged surprise. But he asked for continuance in order to retain an expert but also to speak with his client, which arguably he should have done prior to in assessing. What do you mean? How is he supposed to know you have an expert witness? The whole purpose of Rule 16 is experts are special. They take some time to go out, find an expert, vet them, find out if they can testify. You don't go out and find an expert in five days usually. So how is he supposed to know you've had an expert witness? Yes. The notification for the expert occurred five days prior to trial. Do you maintain that's enough time? In this case, yes. In this case, especially given the location, Puerto Rico is an island and it's surrounded by ocean. There's one of the largest marinas in Puerto Rico is 45 minutes away. I think in this particular case, obtaining an expert to speak regarding this very specialized or very confined area would have been an easy thing for the defendant to do. The defendant never filed a motion. Like a charter boat captain to go this number of nautical miles, you need X number of gallons of fuel. Exactly. If you were going on. Exactly. So five days before trial, defense counsel is supposed to drop everything they're doing, run around, go to the first captain, see if he can do it. I don't want to do it, but maybe my buddy will. Go to the second one and so on and come up with a witness who's got credentials like yours and show up and also prepare everything else they were going to do in the last five days. I believe that in this case, the amount of preparation for this particular expert, even if we're going by the three-day allegation, would have been enough time. If that's true, then why didn't you have him before the five days? Because you just told us the plea bargaining fell apart way more than five days before the trial. And again, Your Honor, there's really no excuse except for the fact that in the District of Puerto Rico, with a very busy caseload, we're handling a lot of cases, especially in the immigration unit where the number of cases coming through that unit are very substantial. So as an attorney down there, you try to approach your schedule by handling things that are more immediate. So in this particular case, we thought it was going to plead out. We were even talking plea negotiations the day of trial. We really thought it was going to go down that route. Can you restate one fact for me again that you've already stated? When was your expert due to become unavailable to you? The expert was not going to be unavailable. The other Coast Guard witnesses and Border Patrol witnesses, the concern was with them. The expert in this case was not PCSing or moving. So the person that was being rotated out, when was that? How long was that? Well, okay, so this case occurred in March, I believe, of 2012. And it went to trial in September, which is during the transfer season. So the government's concern, generally speaking, is that we try to ensure that the witnesses are going to be there that have already PCSed. Let me see if I can ask the question more precisely. I'm just trying to understand whether there would have been a reasonable short continuance that you could have agreed to. And you stated you, I don't know if it was you, but you stated that the government decided not to agree because one or more people were scheduled to be rotated out. I'm just trying to get the time frame. And perhaps I misspoke. Not that they were scheduled to rotate out, but that they had already rotated and we were bringing them back to the jurisdiction. Does that make sense? Then why does it matter to you whether it's this day or a week later? Because then for that week they're taken from their operational positions and in Puerto Rico just waiting for the trial. Why don't they come a week later? Well, arguably we could have sent them back and then brought them back. This is about money, right? This is about how much it costs you to transport these people and you didn't want to have to do it twice? Yes, we're concerned about the logistics of bringing witnesses to, taking them back, bringing them here, and also disrupting the operational tempo of regular daily operations of these individuals. You're saying by the time you get around to designating your expert, your witnesses were already there? The witnesses were in Puerto Rico that week, correct. Okay. But when did they arrive in Puerto Rico? A day or two before. So if you'd had your expert prepared like two weeks before trial, you could have just brought the witnesses there a month later at no additional expense. You wouldn't have had to bring them twice. I guess I'm not tracking what you're saying because in this particular case, the witnesses arrived typically a day or two before trial for final preparation. The expert was already in Puerto Rico. Okay, so if the witnesses arrived a day or two before trial and you're serving the expert designation five days before trial, why didn't you just call up the witnesses and say come a month later? Because the defendant in this case didn't request the continuance until after they had already arrived. Okay. Let me just hypothetically ask you this. Assuming one were to find that there was error on your part in the late service of the expert notice, why do you think that is harmless anyway? Yes, Your Honor, even if there was error, it's harmless in this case. And don't do the in Puerto Rico, you can find an expert over there. I'm not going to go there. What I'm going to say is that in this particular case, we had other witnesses that testified about how much fuel was on board and how far away St. Martin was. And based on the fact that the vessel was first spotted at 30 nautical miles and then finally interdicted at 23 or 21 nautical miles over a three-and-a-half-hour time period where that vessel was making way, the jury can reasonably determine that from 30 nautical miles to 23 nautical miles, that vessel traveled seven to nine nautical miles. So for that vessel to continue on an additional 400 miles, even without the expert saying that it goes two miles per hour, this is the burn rate, they can make that assumption based on the facts that were already in evidence that came in through the testimony of other witnesses, including the other Coast Guard members that observed the amount of fuel on board, the Border Patrol agent that advised the jury where the vessel was first spotted, finally interdicted, and the evidence of how far Puerto Rico was from or St. Martin was from Puerto Rico was brought in through other individuals besides the expert. So there was not – if we were to take the expert's testimony out of the trial altogether, the jury could still come up with the same facts. They could still infer the same facts based on the existing evidence. But that's not the standard. Pardon me? That's not the standard that the jury could have for harmless error. Yes. Okay. So in addition to those facts that were in evidence, the defense attorney had an ample opportunity to cross-examine the expert. Nothing was stated in the brief which showed that his testimony was in any way flawed or incorrect. They offered nothing to show how it was scientifically incorrect. So because he had an opportunity to cross-examine this expert and use him to his own advantage, he failed to do that. There was an earlier distinction drawn between the expert's formulas and then if they were applied to varying sets of fact. The varying sets of fact had to do with the weight of the passengers, the number of gallons of fuel on board, and maybe one or two other things. So was there a serious challenge to the expertise portion, the formulas that were used, or did the challenge merely go to the underlying factual assumptions you gave to the expert? In this particular case, Your Honor, the only challenge that the defense counsel raised during cross-examination was with regard to the weight of the passengers. Brother Counsel mentioned that in this case the defense attorney questioned the witness about specific factors which would offset the amount of fuel. That never took place. In the cross-examination, his questioning was focused on the weight of the actual passengers. And the jury had a picture of all the passengers that were on board, and they could make an assessment on their own as to how much the passengers weighed. Okay. Thank you.